# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01767-COA

**CHRISTI JANE KNIGHT A/K/A CHRISTI J. KNIGHT A/K/A CHRISTI KNIGHT**                    **APPELLANT**

v.

**STATE OF MISSISSIPPI**                                                           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/30/2013 |
| TRIAL JUDGE: | HON. JAMES LAMAR ROBERTS JR. |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MANSLAUGHTER AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $1,000 FINE, $100 TO THE CRIME VICTIMS' COMPENSATION FUND, AND $2,352.75 IN RESTITUTION |
| DISPOSITION: | AFFIRMED – 01/27/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1.     Christi Jane Knight was charged with one count of deliberate-design murder, in the Circuit Court of Tishomingo County.  However, after a jury trial, Knight was convicted of manslaughter.  She was then sentenced to twenty years in the custody of the Mississippi

Department of Corrections. Knight filed a motion for a judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial. The trial court denied Knight's motion. On appeal, Knight raises the following issues: (1) whether the trial court erred when it denied Knight's motion for a JNOV and (2) whether the trial court erred when it denied Knight's motion for a new trial.

## FACTS

¶2.     Tishomingo County 911 dispatcher Odie Mack Vandiver testified that he received a 911 call on July 12, 2012. Shad Reed identified himself and reported an accidental shooting. Reed offered no other information. Vandiver dispatched the Tishomingo Fire Department, the Paden Fire Department, and an air-evacuation team.

¶3.     On that same day, Charles Crosby was riding his four-wheeler and encountered Jeffery Powell, who was riding a dirt bike at approximately 6:30 p.m. or 7:00 p.m. Powell did not have a headlight on his bike and night was beginning to fall. Crosby offered to follow Powell home because Crosby had headlights on his four-wheeler. Crosby followed Powell home, which was located at 5-A Hill Road.

¶4.     While Powell was there, he saw a man, Shad Reed, Christi Knight's fiancé, holding a shotgun to a man's head, who was later identified as the victim, Doug Long. Crosby did not know why Reed was holding a shotgun to Long's head; however, when Reed saw Crosby, he told him to leave. At trial, Crosby described Reed as intoxicated, and he saw the defendant, Christi Knight, yell and curse at Long. Crosby followed Reed's directive and left the property. After Crosby left, he went to the Tishomingo Police Department and spoke with Mike Kemp, the chief of police, about what he witnessed at 5-A Hill Road.

2

¶5.    Reed testified that Long was the boyfriend of Knight's daughter, Stephanie Truelock, for about eight months. Reed also testified that he, Long, and Powell were shooting cans and had started drinking at about midday. Knight, Truelock, and Reed's daughter Sabryna went to the grocery store and returned about 2:30 or 3:00 in the afternoon. While the group started to grill, Truelock told her mother that Long had hit, beaten, cut, and dragged her down the hallway. Knight then told Reed what she learned from Truelock. Reed became angry, grabbed a 20-gauge shotgun, went outside, and pointed the shotgun at Long's head and told him, "We need to talk."

¶6.    Reed then asked Long why he was hitting Truelock, and Long told him that she was hitting him as well. Long told Reed that he was not afraid of the gun, and Reed placed the gun on the hood of his truck. Reed then turned around to get Truelock from inside the house and started up the steps to the trailer. Reed also heard Knight arguing with Long and telling him to go home. Then Reed heard the gunshot, and turned around to get back to Knight and Long. Once he saw Long, he told Knight to call 911, and then took his shirt off and put it over Long's chest wound and began CPR. After speaking with the operator, Reed asked Knight what happened, and she told him that she shot him. When Chief Kemp arrived on the scene, he informed Reed that Long was dead and took Reed into custody.

¶7.    Chief Kemp testified at trial that when he pulled up on the property, he saw a man attempting CPR. When Chief Kemp approached Reed, Reed screamed at him to do something for Long. At that time, Chief Kemp believed that Reed was the shooter. Reed stood up, walked towards the trailer, and did not stop when Chief Kemp ordered him to stop. When Chief Kemp caught up to Reed, there was a scuffle. Another officer was inside the

3

trailer and came out and subdued Reed. Chief Kemp then put Reed in the backseat of a patrol car.

¶8. It was at this point that Chief Kemp heard screaming and returned to the trailer. At the trailer, he met Knight, who seemed intoxicated and smelled of alcohol; Knight asked Chief Kemp why he arrested Reed. Knight then informed Chief Kemp that she shot Long because she thought he was a deer. Chief Kemp then took Knight into custody.

¶9. Knight's daughter, Truelock, testified that she and Long had been in a relationship for nine or ten months, and they were both addicted to methamphetamine and alcohol. Truelock testified that Long was abusive to her and her eight month old child, and she asked her mother to take the child so that they could go to either rehab or jail. Truelock also stated that everyone was drinking and that she was "wasted." Truelock was passed out, and the gunshot roused her from her sleep. She asked her mother what happened. Knight told Truelock that she shot Long and that "that ******** probably deserved it." Reed also asked Knight what she did.

¶10. Knight testified in her defense. She went with Truelock and Sabryna to pick up a puppy for Reed, and Truelock told her that Long was abusing her. She told Reed what Truelock told her, and Reed grabbed a gun and went outside. Knight testified that she was behind Reed telling him not to confront Long. Knight corroborated Reed's testimony about the confrontation with Long. Reed put the gun down and went to get Truelock to determine the truth.

¶11. After Reed left, Knight stated that she felt Long push her and she fell, bouncing off the truck. When she got up, she heard Long say he was going to cut Truelock's breasts and

4

shove them down her throat in front of Truelock's eight-month-old child. Knight started yelling and told Long to go home. Knight testified that she took the gun off the hood of the truck, and she heard him growl and say, "You're first." According to Knight, Long was coming towards her, and she thought he was going to hit her. Knight shot Long and testified that she was in a state of shock. Reed told her to call 911, and she brought Reed's phone to him and took over the CPR.

¶12. Dr. Erin Barnhart conducted an autopsy of Long and testified that Long died from a gunshot that was fired two to five feet away from him. Dr. Barnhart also testified that there were injuries to Long's aorta, right lung, and liver. She also stated that Long's toxicology report indicated that his blood-alcohol content was 0.17 percent, but there was not an indication of any illegal drugs, only caffeine and nicotine.

¶13. On September 28, 2012, Knight was indicted for one count of deliberate-design murder. After a jury trial on August 27 through August 30, 2013, Knight was convicted of manslaughter and sentenced to twenty years in the custody of the Mississippi Department of Corrections. Knight filed a motion for a JNOV and a motion for a new trial, both of which the trial court denied on October 3, 2013.

¶14. Knight appeals.

### DISCUSSION

I. **Whether the trial court erred when it denied Knight's motion for a JNOV.**

¶15. "A motion for a JNOV challenges the legal sufficiency of the evidence." *Massey v. State,* 992 So. 2d 1161, 1162 (¶7) (Miss. 2008). When considering the sufficiency of the

5

evidence, the evidence supporting the guilty verdict is accepted as true. *Reed v. State,* 956 So. 2d 1110, 1111 (¶6) (Miss. Ct. App. 2007). Further, the State "must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence." *Id.* Finally, "the jury determines the credibility of witnesses and resolves conflicts in the evidence." *Id.*

¶16. Knight argues that there was no duty to retreat when she was dealing with an assailant at her home. Knight further argues that a reasonable and fair-minded jury could only find her not guilty. Knight also asserts that she reasonably believed, based on the confessions of Truelock, that Long would carry out his threats against Truelock.

¶17. Knight was charged with murder; however, the jury convicted Knight of manslaughter, a lesser included offense. Manslaughter is defined as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self defense[.]" Miss. Code Ann. § 97-3-35 (Rev. 2014). The State bore the burden to prove that Knight did not act in self-defense beyond a reasonable doubt. *Hammond v. State,* 119 So. 3d 1074, 1078 (¶15) (Miss. Ct. App. 2013).

¶18. Knight argues that she had no duty to retreat. The "no duty to retreat" rule is stated in Mississippi Code Annotated section 97-3-15(4) (Rev. 2014), which provides:

> A person who is not the initial aggressor and is not engaged in unlawful activity shall have no duty to retreat before using deadly force under subsection (1)(e) or (f) of this section if the person is in a place where the person has a right to be, and no finder of fact shall be permitted to consider the person's failure to retreat as evidence that the person's use of force was unnecessary, excessive or unreasonable.

¶19. Here, jury instructions were given concerning self-defense, duty to retreat, and

manslaughter. It is undisputed that Knight shot and killed Long. Further, another officer and Chief Kemp testified that Knight stated that she shot Long because she thought he was a deer. Also, the 911 dispatcher testified that the shooting was initially reported as accidental. Knight's assertion of self-defense did not occur until after her arrest. Further, no other party present heard the threats Long made to Knight before the shooting.

¶20.    "A successful self-defense argument requires that the jury believe that it was objectively reasonable for the defendant to believe that [s]he was in danger of imminent death or serious bodily harm." *Wilder v. State,* 118 So. 3d 628, 631 (¶9) (Miss. Ct. App. 2012).

¶21.    In viewing the evidence in the light most favorable to the State, each element of the crime is satisfied. We find that there was sufficient evidence to support the conviction. Therefore, this issue is without merit.

**II.    Whether the trial court erred when it denied Knight's motion for a new trial.**

¶22.    Knight argues that the trial court erred in denying her motion for a new trial. A motion for a new trial challenges the weight of the evidence, not the sufficiency of the evidence. *Williams v. State,* 89 So. 3d 676, 683 (¶20) (Miss. Ct. App. 2012). "[A]n appellate court will order a new trial only where the verdict 'is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Id.*

¶23.    We have previously stated that "[t]his Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible." *Luster v. State,* 143 So.

3d 636, 641 (¶18) (Miss. Ct. App. 2014). Further, "[t]he jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." *Langston v. State,* 791 So. 2d 273, 280 (¶14) (Miss. Ct. App. 2001).

¶24. We find that the jury verdict was not against the overwhelming weight of the evidence. As previously discussed, it is undisputed that Knight shot Long. Additionally, there was testimony of a verbal altercation between Long and Knight prior to the shooting. Therefore this issue is without merit.

## CONCLUSION

¶25. Viewing the evidence in the light most favorable to the verdict, there is sufficient evidence to support Knight's conviction. Also, the verdict is not contrary to the overwhelming weight of the evidence. The State provided evidence that Knight was intoxicated, shot and killed Long, and was not acting in self-defense. The jury was provided proper instructions involving self-defense and the duty to retreat. Therefore, the judgment of the trial court is affirmed.

¶26. **THE JUDGMENT OF THE TISHOMINGO COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $1,000 FINE, $100 TO THE CRIME VICTIMS' COMPENSATION FUND, AND $2,352.75 IN RESTITUTION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TISHOMINGO COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR.**